1   Lawrence C. Ecoff, Esq. (SBN 143814)
    Philip H.R. Nevinny, Esq. (SBN 150506)
2   ECOFF BLUT, LLP
    280 South Beverly Drive, Suite 504
3   Beverly Hills, CA 90212
    Telephone: (310) 887-1850
4   Facsimile: (310) 887-1855
    ecoff@ecofflaw.com
5
    Attorneys for Defendant
6   SUSAN HUNG

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  FAIR HOUSING COUNCIL OF        )  Case No.   SACV10-01079 CJC
    ORANGE COUNTY, INC, and        )  (RNBx)
12  ARLENE LEWIS,                  )
                                   )  MEMORANDUM OF POINTS
13              Plaintiffs,        )  AND AUTHORITIES IN
                                   )  SUPPORT OF DEFENDANT
14       vs.                       )  SUSAN HUNG'S MOTION FOR
                                   )  SUMMARY JUDGMENT, OR IN
15  SAM CHANG, etc., et al.,       )  THE ALTERNATIVE, PARTIAL
                                   )  SUMMARY JUDGMENT
16              Defendants.        )
                                   )  Date: October 3, 2011
17                                 )  Time: 1:30 p.m.
                                   )  Place: Courtroom of the
18                                 )      Hon. Cormac J. Carney

19  _____  Discovery Cutoff: July 1, 2011
                                        Pretrial Conf.:   October 3, 2011
20                                      Trial:            October 11, 2011

21

22  **TO: THE HONORABLE COURT, ALL PARTIES AND THEIR**

23  **RESPECTIVE ATTORNEYS OF RECORD:**

24       Defendant Susan Hung hereby submits her Memorandum of Points and

25  Authorities in support of her Motion for Summary Judgment, or in the alternative,

26  Partial Summary Judgment, against Plaintiffs Fair Housing Council of Orange

27  County, Inc. and Arlene Lewis ("Plaintiffs"), pursuant to *Federal Rules of Civil*

28

1

*Procedure,* Rules 56(b) and 56(d)(1).

This Motion is supported by good cause. The undisputed facts demonstrate that Defendant Hung (and her agents and representatives) did not at any time engage in any unfair or discriminatory housing practices against Plaintiffs. Therefore, and based on the applicable law, Summary Judgment should be entered in favor of Defendant Hung on all of Plaintiffs' claims under the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (Claim One), California's Fair Employment and Housing Act, *Government Code* § 12955 *et seq.* (Claim Two), California's Unruh Civil Rights Act, *Civil Code* § 51 (Claim Three), California *Business & Professions Code* § 17200 (Claim Four), and Negligence (Claim Five).

In the alternative, Defendant Hung is entitled to Partial Summary Judgment in her favor, for an Order treating specified facts as established in the action pursuant to *Federal Rules of Civil Procedure,* Rule 56(d)(1), as follows:

1. That Defendant Susan Hung (and her agents and representatives) is not liable on any claims under the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (Claim One), California's Fair Employment and Housing Act, *Government Code* § 12955 *et seq.* (Claim Two), California's Unruh Civil Rights Act, *Civil Code* § 51 (Claim Three), California *Business & Professions Code* § 17200 (Claim Four), and Negligence (Claim Five);

2. That Plaintiff Arlene Lewis has not suffered any emotional distress damages attributable to the conduct of Defendant Susan Hung (or her agents and representatives), as alleged in the Complaint;

3. That Plaintiff Fair Housing Council of Orange County, Inc.'s claim for damages, including but not limited to diversion of resources, are speculative and overstated;

4. That Defendants did not engage in any conduct which gives rise to a

1                claim for punitive damages, as alleged in the Complaint.

2

3                                       Respectfully Submitted,

4    Dated:  September 1, 2011        ECOFF BLUT, LLP

5

6                                     By:   _____

7                                     LAWRENCE C. ECOFF, ESQ.

8                                     PHILIP H.R. NEVINNY, ESQ.

9                                     Attorneys for Defendant
                                         SUSAN HUNG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.     Deposition Testimony of Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.     Plaintiff Arlene Lewis . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.     FHCOC's Tester Dawn Rostagno . . . . . . . . . . . . . . . . . . . . 10

        3.     FHCOC's Investigator Angelica Coronel . . . . . . . . . . . . . . . . 12

        4.     FHCOC's Chief Executive Officer Denise Cato . . . . . . . . . . . . . . . . . 12

III.   LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.     Standard on Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.     Defendant Susan Hung Did Not Engage in Any Discriminatory
        Housing Practices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.     Plaintiff Arlene Lewis Has Not Suffered Any Emotional Distress
        Damages Attributable to the Conduct of Defendant Hung . . . . . . . . . . . . . . . 17

    D.     Plaintiff FHCOC Cannot Establish Its Entitlement to Diversion
        of Resource or Frustration of Mission Damages . . . . . . . . . . . . . . . . . 19

    E.     Defendant Hung Did Not Engage in Any Conduct Which Gives
        Rise to a Claim for Punitive Damages . . . . . . . . . . . . . . . . . . . . . . 21

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

1

## **TABLE OF AUTHORITIES**

2

3    *Cases*

4    *Carmen v. San Francisco Unified Sch. Dist.,*

5          237 F. 3d 1026, 1028-31 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6    *Celotex Corp. v. Catrett,*

7          *477 U.S. 317, 322 (1986)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8    *Fairbank v. Wunderman Cato Johnson,*

9          212 F. 3d 528, 531 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10    *Fair Housing of Marin v. Combs,*

11          285 F.3d 899, 906 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12    *Harris v. Itzhaki,*

13          183 F. 3d 1043 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14    *Hoeft-Ross v. Hoeft,*

15          352 Fed. Appx. 221 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16    *Housing Rights Center v. Krug,*

17          654 F. Supp. 2d 1138, 1147-48 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . 19

18    *Keith v. Volpe,*

19          858 F. 2d 467 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20    *Kolstad v. American Dental Ass'n,*

21          527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) . . . . . . . . . . . . . 21

22    *McDonald v. Coldwell Banker,*

23          543 F. 3d 498 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24    *M2 Software, Inc. v. Madacy Entertainment Corp.,*

25          421 F. 3d 1073, 1086 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26                                                -ii-

27

28    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF AUTHORITIES (con't)</u>

*Cases*

*Ojo v. Farmers Group, Inc.,*
    600 F. 3d 1205 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pfaff v. U.S. Dept. of Housing and Urban Development,*
    88 F. 3d 739 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sanghi v. City of Claremont,*
    328 F. 3d 532 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,*
    251 F. 3d 814, 820, fn. 6 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Taybron v. City & County of San Francisco,*
    341 F. 3d 957, 960 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Statutes*

*California Business & Professions Code* § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . 17

California's Unruh Civil Rights Act, Civil Code § 51 . . . . . . . . . . . . . . . . . . . . . . 17

Fair Housing Act, 42 U.S.C. § 3601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 3613( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Federal Rule of Civil Procedure* 56(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Federal Rule of Civil Procedure* 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*California Government Code* § 12955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The federal Fair Housing Act (42 U.S.C. § 3601 *et seq.*) and California's Fair Employment and Housing Act (California *Government Code* § 12955 *et seq.*) are intended to protect the public, and particularly, the rights of individuals who may be discriminated against in housing practices based upon identifiers such as their race, source of income, or disability.  They are not mechanisms to line the pockets of the Fair Housing Councils, and their attorneys, particularly where there is no actual evidence of discrimination.  That, however, is precisely what this case represents.

Discovery in this case is complete.  Recently, Defendant Susan Hung ("Hung") conducted the depositions of Plaintiff Arlene Lewis ("Lewis") and representatives of Plaintiff the Fair Housing Council of Orange County, Inc. ("FHCOC" and collectively, "Plaintiffs").  The testimony of the Plaintiffs established that Lewis did not in fact experience discriminatory housing practices by Ms. Hung, nor did she suffer any demonstrable emotional distress damages based upon Hung's conduct.  Indeed, around the same time as the events described by Plaintiffs, Lewis claims to have been discriminated against on approximately 20 (twenty) separate occasions.  She also initiated complaints with the Fair Housing Council of Long Beach, against two other landlords based on alleged unfair housing practices which she failed to pursue, without explanation.

The testimony of testers for the FHCOC in fact established that Ms. Hung does *not* engage in discriminatory housing practices based upon either disability or source of income, and that Ms. Hung actually rents to disabled individuals, and offered both Ms. Lewis and the FHCOC's testers the opportunity to rent at the subject properties.  Ms. Hung herself was also deposed, and credibly testified that

1  she did not deny Lewis the opportunity to become a tenant at her property, which
2  was consistent with Hung's prior conduct, and with the experience of the FHCOC's
3  tester. Ms. Hung further testified that she is an experienced property manager, with
4  a history of complying with Fair Housing laws, and renting to those with
5  disabilities.

6      With respect to FHCOC's alleged "diverted resources" damages for time
7  spent on the subject case and educating the public, they appear to have been made
8  of whole cloth. FHCOC's representatives testified that they maintain time records
9  "in their heads,"[1] could not explain how they allocated or otherwise accounted for
10  time, and inflated their claimed future testing costs *ten fold.*

11      Given the foregoing recent testimony, it is apparent that Plaintiffs are
12  seeking a deep pocket windfall. Simply put, liability for Fair Housing
13  discrimination does not attach, where the plaintiff cannot show a discriminatory
14  effect. Moreover, Lewis has been completely unable to establish any emotional
15  distress damages attributable to the conduct of Ms. Hung. The FHCOC's diversion
16  of resource damages in fact do not represent a "reasonable estimate," as required by
17  the applicable authorities, but rather are impossibly speculative and inflated.

18      It is frankly offensive, given the facts recently adduced, that Plaintiffs would
19  persist in seeking to collect punitive damages, where there is no evidence
20  whatsoever in the record of "reckless indifference" by the Defendant, which could
21  support such a claim.

22      Simply put, Plaintiffs have cynically brought and maintained this action as a
23  mechanism to pressure Hung in a case that is without merit on its face, and to

24

25  [1]Tellingly, Angelica Coronel, the FHCOC's representative who testified under oath as to the
26  organization's failure to maintain accurate, contemporaneous time records prepared by the timekeeper herself, has now dramatically changed the substance of her testimony to state that, actually, time is
27  kept "In my head and then recorded on the supplemental contact sheet for that day or task." A review of the balance of the testimony on this topic (attached as Exhibit "__" to the Declaration of Philip H.R.
28  Nevinny ("Nevinny Decl."), demonstrates just how misleading this change in testimony is.

1   extract a substantial settlement. Defendant Hung is therefore entitled to Summary

2   Judgment in her favor, and an Order that Plaintiffs take nothing by their Complaint,

3   and that the action be dismissed in its entirety. In the alternative, Defendant is

4   entitled to an Order treating the specified facts set forth herein as established.

5                                                    **II.**

6                                    **STATEMENT OF FACTS**

7       Defendant Susan Hung, through a trust, is a co-owner of a 14 unit apartment

8   building commonly known as 8142 Artesia Boulevard, Buena Park, California

9   90621 (the "Artesia Property"), and a 17 unit apartment building commonly known

10  as 8021 4th Street, Buena Park, California 90621 (the "4th Street Property").

11  (Declaration of Susan Hung ("S. Hung Decl."), ¶ 2; Defendant's [Proposed]

12  Statement of Uncontroverted Facts and Conclusions of Law ("DUF") No. 1.) Ms.

13  Hung has been involved in the ownership, management and leasing of residential

14  housing for over two decades. (S. Hung Decl., ¶ 3; DUF No. 2.)

15      Ms. Hung manages and leases the Artesia Property and the 4th Street

16  Property. Because of the difficulties of renting in this real estate market, it is not

17  her practice to reject prospective tenants. In fact, as a landlord, it is her desire to

18  have her properties fully occupied. She cannot recall having rejected a prospective

19  tenant who completed an Application for rental of those properties at any time from

20  2009 through the present. (S. Hung Decl., ¶ 4; DUF No. 3.)

21      Notably, during the last ten years, Defendant Hung has rented to a family

22  with a mentally disabled child at the 4th Street Property. The child's disability was

23  disclosed to Ms. Hung by the parent at the time of her rental application.

24  Currently, she rents Unit #101 at the 4th Street Property to another family with a

25  severely mentally disabled child. (S. Hung Decl., ¶ 5; DUF No. 4.)

26      Plaintiffs allege that defendants discriminated against them because of

27  disability, in connection with the operation of their rental properties in Orange

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

1    County.  Plaintiff Arlene Lewis resides with her adult son, Tobby, who is disabled

2    within the meaning of the Fair Housing Act, 42 U.S.C. § 3602, and the Fair

3    Employment and Housing Act, Govt. Code § 12927.  (Complaint, Doc. 1, ¶ 5.)

4        Ms. Lewis alleges that, in the course of seeking housing for herself and her

5    disabled son, she contacted Defendant Susan Hung, disclosed her son's disability,

6    and was told by Ms. Hung that Ms. Lewis could not rent a dwelling because of her

7    son's disability.  Plaintiff alleges that on November 21, 2009, Ms. Lewis contacted

8    defendant Hung, inquiring about the process for applying for rental of a dwelling.

9    Plaintiff further contends that in response, Ms. Hung  asked about Ms. Lewis'

10   income.   Ms. Lewis replied that her household receives income for a variety of

11   sources, including her retirement from Los Angles County and SSI, which her son

12   Tobby receives because of his disabilities.  Ms. Hung then allegedly inquired into

13   the nature and extent of Tobby's disabilities.  According to Ms. Lewis, Hung then

14   refused to show her an available apartment or to rent to her because of the

15   disability of her son.  (Complaint, Doc. 1, ¶¶ 10-15.)

16       Ms. Hung does not recall having spoken to Ms. Lewis in late 2009, although

17   she does recall having received a call from a prospective tenant of the 4th Street

18   Property, who informed her that she had a disabled son.  As is Ms. Hung's normal

19   custom and practice, she would have invited Ms. Lewis to visit the property, and to

20   complete a Lease Application.  It is not Ms. Hung's custom or practice to consult

21   with her husband regarding prospective tenants.  (S. Hung Decl., ¶ 6;  Declaration

22   of Norman Hung ("N. Hung Decl."), ¶ 9; DUF No. 5.)

23       According to Ms. Lewis, Ms. Hung refused to rent to her because Lewis

24   disclosed that her son collects SSI.  Until this lawsuit, however, Hung was not even

25   familiar with the term "SSI," nor was she aware that people with a disability can

26   collect Social Security Income.  It is not Ms. Hung's custom or practice to ask a

27   prospective tenant about their source of income.  (S. Hung Decl., ¶ 8; DUF No. 6.)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1   Neither Ms. Hung nor her husband, Norman Hung, have ever discriminated

2   against any prospective tenant, including Ms. Lewis, on the basis of disability,

3   source of income, or race.  (S. Hung Decl., ¶ 9; N. Hung Decl., ¶ 10; DUF No. 7.)

4   **A.    Deposition Testimony of Plaintiffs**

5   The allegations of Plaintiffs' Complaint that Hung engaged in

6   discriminatory housing practices under the federal Fair Housing Act and

7   California's Fair Employment and Housing Act were essentially gutted at

8   deposition.  Plaintiffs' claims for damages were similarly demonstrated to be

9   entirely without merit.  Representative testimony was as follows:

10  **1.    Plaintiff Arlene Lewis**

11  Arlene Lewis was deposed on June 29, 2011.  Ms. Lewis testified that in

12  June 2009, she moved with her mentally disabled son Tobby to her friend Patricia

13  McNeal's home in Fullerton.  (Deposition Transcript of Arlene Lewis ("AL"),

14  Exhibit "A" to Declaration of Philip H.R. Nevinny ("Nevinny Decl.,") 40:9-23;

15  DUF No. 8.)  Ms. Lewis moved to her friend's apartment in Orange County for the

16  specific purpose of getting away from her adult son, Tommy Joseph, whom she did

17  not want to know where she resided.  (AL, 38:15-24; DUF No. 9.)

18  The reason for Ms. Lewis' move was corroborated by Patricia McNeal, who

19  testified that Ms. Lewis was having problems with one of her family members, and

20  that Ms. McNeal was actually afraid for her friend.  (Deposition Transcript of

21  Patricia McNeal ("PM"), Nevinny Decl., Exhibit "E," 23:3-7; DUF No. 10.)

22  Presumably this circumstance and concern for her own safety would have caused

23  Ms. Lewis considerable emotional distress.

24  Ms. Lewis further testified that between June, 2009 and November, 2009,

25  she was turned down while seeking to rent an apartment approximately twenty (20)

26  times.  (AL, 45:11-14; DUF No. 11.)

27  Specifically, Lewis testified that on at least two occasions outside of this

28  case, she was denied an apartment based upon her son's disability.  (AL, 50:2-6;

56:1-3; DUF No. 12.)  Lewis initiated complaints with the Fair Housing Council of Long Beach based upon each of these experiences, which were not pursued, as "inconclusive."  (AL, 52:2-4; 56:16-18; DUF No. 13.)

Lewis then described an alleged telephone conversation she had with Ms. Hung in November, 2009, in which Lewis alleged that she informed Ms. Hung of her son's receiving S.S.I, and being mentally disabled.  According to Lewis, Ms. Hung told her that she would need to check with her husband and call her back.  (AL, 65:13-14; DUF No. 14.)  Lewis claims that Hung then in fact called her back, solely for the purpose of telling her that she would not rent to her based upon her son's disability.  (AL, 65:19-22; DUF No. 15.)  When asked whether Ms. Hung called Lewis back in order to show her an apartment, Ms. Lewis first testified that such a meeting was "never confirmed," and then evasively claimed not to understand the question.  (AL, 68:7-15; 69:5-18; DUF No. 16.)  After this alleged conversation, Lewis claimed that she did "nothing," other than to continue to search for an apartment.  (AL:73:1-4; DUF No. 17.)  A week or two later, Lewis then lodged a complaint with the FHCOC.  (AL, 74:10-21; DUF No. 18.)

When presented with her written statement attached to the Department of Housing and Urban Development Complaint filed in connection with this matter, Lewis confirmed that she wrote the words: "I said she didn't like to rent to people with S.S.I."  (Nevinny Decl., Exhibit "B"; DUF No. 19.)  Lewis testified incredibly that this was an "error in writing," and that this should have been a quotation of Hung's words.  (AL, 80:17-25.)

With respect to Lewis claimed damages for mental suffering, Lewis testified that she started feeling sick, having headaches and stomach aches, and it was hard for her to stay focused on conversations.  (AL, 107:22-25; DUF No. 20.)  Lewis further testified that she gained fifteen (15) pounds from eating fast food.  (AL, 108:5-6; DUF No. 20.)  Lewis did not seek any medical treatment in connection with her symptoms, did not see a doctor, did not visit a psychiatrist, did not visit a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1 psychologist, was not prescribed any medications, and did not take any over the

2 counter medications.  (AL, 109:10-21; 113:17-114:1; DUF No. 21.)  Notably, Ms.

3 McNeal testified at length and in detail that Lewis suffered from such symptoms

4 during the time that Lewis resided with her, *months before* any of the incidents

5 alleged in the Complaint.  (PM, 22:11-17; 23:8-23; 38:1-20; DUF No. 22.)

6 According to Ms. McNeal, Lewis moved out of her apartment in the summer of

7 2009, months before the alleged phone call with Ms. Hung in November, 2009.

8 (PM, 31:13-15; DUF No. 23.)

9      Ms. Lewis testified that she engages in various activities with her son Tobby,

10 including watching television, going out to dinner, house hunting, and daily walks.

11 AL, 121:2-24; DUF No. 24.)

12      **2.**    **FHCOC's Tester Dawn Rostagno**

13      The testimony of FHCOC's tester Dawn Rostagno was perhaps most telling

14 of all, and leads one to question how this action ever got filed.  Ms. Rostagno

15 testified that she met with Norman Hung, Defendant Susan Hung's husband, at the

16 property located at 8142 Artesia Boulevard, Buena Park, California on January 12,

17 2010.  (June 29, 2011 Deposition Transcript of Dawn Rostagno ("DR"), Nevinny

18 Decl., Exhibit "C," 24:15-23; 37:13-16; Tester Assignment Form - Rentals,

19 Nevinny Decl., Exhibit "D"; DUF No. 25)  Rostagno testified that after she

20 informed Mr. Hung about her son's mental disability, his response was to inquire

21 about her son's physical ability to access the available unit, which was located on

22 the second floor.  (DR, 58:14-23; DUF No. 26.)  This question was asked out of

23 concern for Ms. Rostagno's son's ability to access the apartment in question.  (N.

24 Hung Decl., ¶ 5; DUF No. 27.)  According to Ms. Rostagno, Mr. Hung also shared

25 with Rostagno his experience of renting to another mentally disabled tenant.  (DR,

26 60:8-14; DUF No. 28.)

27      *After* the foregoing, Mr. Hung then proceeded to show Rostagno the

28 available unit, stating, "This is a nice place for two adults."  (DR, 62:12-24; 65:8-9;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  DUF No. 29.)  Next, Mr. Hung responded to Rostagno's questions regarding a

2  security deposit and credit check, and volunteered information regarding utilities

3  and parking.  (DR, 67:19-68:8; N. Hung Decl., ¶ 6; DUF No. 30.)

4       Rostagno then asked for a rental application, and Mr. Hung looked for one in

5  the kitchen of the apartment.  (DR, 70:14-24; DUF No. 31.)  When Mr. Hung could

6  not find one, he then said, "I think I have one in my car."  (DR, 71:2-16; DUF No.

7  32.)  Mr. Hung and Rostagno next proceeded to walk to Mr. Hung's car, where he

8  located a rental application, and provided it to Rostagno, inviting her to fill it out

9  and provide it to his wife, Susan Hung.  (DR, 73:4-19; N. Hung Decl., ¶ 7; DUF

10  No. 33.)

11       Next, Mr. Hung also offered to show the prospective tenant another available

12  apartment unit at the 4th Street Property.  Rostagno, however, declined to let Mr.

13  Hung show her the other apartment, because she stated that she had to leave to visit

14  another property.  (Hung Decl., ¶ 8; DUF No. 34.)  This conduct by Defendant

15  Hung's husband Norman Hung was *consistent* with the testimony of another

16  FHCOC tested, Sarah Goldstein, who testified that she was shown two apartment

17  units by Ms. Hung.

18       In sum, after the FHCOC's tester disclosed her son's mental disability, Mr.

19  Hung: inquired as to her son's physical condition, as the available unit was on the

20  second floor; informed the tester of another mentally disabled tenant to whom the

21  Hungs had rented; showed the tester the unit; spoke favorably about the unit;

22  answered all of the tester's questions regarding rental and volunteered other helpful

23  information; looked for an application; told the tester that he believed he had an

24  application in his car; went to his car in order to provide the tester the application;

25  invited the tester to complete and return the application, including all relevant

26  contact information for the Hungs; and then offered to show the tester a second

27  apartment for rent.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

### 3.    FHCOC's Investigator Angelica Coronel

Angelica Coronel is an investigator with the FHCOC.  With respect  to hours sought to be recovered by FHCOC in connection with this action, Coronel testified that she keeps track of time "In my head," and that time spent on a file is estimated based on the hours spent on all case files.  (June 28, 2011 Deposition Transcript of Angelica Coronel ("AC"), Nevinny Decl. Exhibit "F," 56:13-57:19; DUF No. 35.)

Coronel further testified that she telephoned Ms. Hung regarding an apartment, who provided information and answered Coronel's questions, offered to show her the apartment, and did not ask the caller's ethnicity, or whether she was disabled.  (AC, 58:5-13; DUF No. 36.)

Ms. Coronel testified that she prepared a damages worksheet in connection with this case, in which FHCOC sets forth $34,213.66 of damages, including Staff Time and attorney time (totaling 206.7 hours, despite the nominal time set forth in poorly maintained records), Future Testing for five years (20 Tests at $400 each, totaling $8,000, despite the fact that tests are, in reality, only $42.50 to $55 per test), and Management Education for five years ($3,000).  (Nevinny Decl., Exhibit "G"; DUF No. 37.)  These figures do not include substantial attorneys fees sought by Plaintiff's attorneys of record in this action, totaling some $74,175.45.

### 4.    FHCOC's Chief Executive Officer Denise Cato

Denise Cato, FHCOC's Chief Executive Officer, testified that she used to keep track of her time in notebooks that she has since discarded, and that time is now set forth in a log of meetings, maintained by another employee.  (June 28, 2011 Deposition Transcript of Denise Cato ("DC"), Nevinny Decl., Exhibit "H," 33:7-34:25; DUF No. 38.)  Ms. Cato confusingly testified that her counselors keep track of Ms. Cato's own time.  (DC, 35:17-36:16; DUF No. 39.)  Ms. Cato further confirmed that testers are paid $42.50 to $55 per test, but that FHCOC is seeking $400 per test in this case, which includes recruiting, training, and materials for

1   testers.  (DC, 43:5-23; DUF No. 40.)

2        FHCOC's alleged damages also include five years of public service

3   announcements broadcast in the Buena Park community, as well as newspaper

4   advertisements in Orange County.  (DC, 49:21-25; DUF No. 41.)  The further

5   charges for future staff time, including attorney time, were all estimates.  (DC,

6   53:23-24; 55:14-19; DUF No. 42.)

7        In sum, Plaintiff FHCOC's diversion of resources damage claims are not

8   based upon reliable time records, are highly speculative, and indeed inflated.  They

9   in no way reflect a "reasonable estimate" of time incurred, as required by

10   applicable authorities.  The same argument applies to Plaintiff FHCOC's claim for

11   frustration of mission damages, since the amounts claimed therefore are also

12   hopelessly speculative.  In fact, such damages are particularly inappropriate and

13   unnecessary, where Defendant Hung *has rented and does rent to disabled tenants.*

14   It also shocks the conscience that Plaintiff should demand approximately

15   $75,000.00 in attorneys' fees in connection with a case in which brief depositions

16   have all been completed, and there have been no law and motion matters brought

17   before the Court.

18        Finally, none of the conduct described by Ms. Lewis, the FHCOC or its

19   testers rises to the level of "reckless indifference" establishing a claim for punitive

20   damages.  Based on the foregoing, Defendant Susan Hung is entitled to an Order

21   treating the foregoing facts, including the absence of demonstrable compensatory

22   damages, and the non-existence of conduct giving rise to punitive damages, as

23   established.

24                              **III.**

25                 **LEGAL DISCUSSION**

26   **A.**     **Standard on Summary Judgment**

27        Summary judgment is appropriate if "the pleadings, the discovery and

28   disclosure materials on file, and any affidavits show that there is no genuine issue

1   as to any material fact and that the movant is entitled to judgment as a matter of

2   law." *Federal Rule of Civil Procedure* 56(c)(2).  As the United States Supreme

3   Court has explained, summary judgment should be entered "against a party who

4   fails to make a showing sufficient to establish the existence of an element essential

5   to that party's case, and on which the party will bear the burden of proof at trial."

6   *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Furthermore, "Rule 56(e)

7   requires the nonmoving party to go beyond the pleadings and identify facts which

8   show a genuine issue for trial." *Fairbank v. Wunderman Cato Johnson,* 212 F. 3d

9   528, 531 (9th Cir. 2000).

10      Thus, as the Courts have explained, the party opposing summary judgment

11   "must cite to the record in support of the allegations made in the pleadings to

12   demonstrate that a genuine controversy requiring adjudication by a trier of fact

13   exists." *Taybron v. City & County of San Francisco,* 341 F. 3d 957, 960 (9th Cir.

14   2003).  A district court is not required to comb the record looking for genuine

15   issues of material fact that a party does not bring to the court's attention.  *Carmen*

16   *v. San Francisco Unified Sch. Dist.,* 237 F. 3d 1026, 1028-31 (9th Cir. 2001).

17      In the alternative, should the Court be disinclined to enter summary

18   judgment in Defendant's favor on the entirety of the Complaint, Defendant Susan

19   Hung is entitled to summary judgment pursuant to *Federal Rule of Civil Procedure*

20   56(d), treating the facts described herein as established.  Those facts include: that

21   Defendant is not liable under the federal and state statutes sued upon; that Plaintiff

22   Arlene Lewis has not suffered any emotional distress damages attributable to the

23   conduct of Defendant Susan Hung; that Plaintiff FHCOC claim for damages,

24   including diversion of resources, are speculative and overstated; and, that

25   Defendant did not engage in any conduct that would give rise to a claim for

26   punitive damages.

27      Based on the sworn testimony of all witnesses, as well as the documentary

28   evidence, there is no genuine dispute that Defendant Hung's conduct was ***not***

14

1  discriminatory, that Plaintiffs have not suffered damages, and that there is no basis

2  for a claim of punitive damages.  Therefore, Defendant is entitled to Summary

3  Judgment in her favor, as a matter of law.

4  **B.    Defendant Susan Hung Did Not Engage in Any Discriminatory**

5  **Housing Practices**

6  In order for Plaintiffs to establish a *prima facie* case of disparate impact

7  under the Fair Housing Act, Plaintiffs must show *at least* that the defendant's

8  actions had a discriminatory effect.  *Pfaff v. U.S. Dept. of Housing and Urban*

9  *Development*, 88 F. 3d 739 (9th Cir. 1996).  The same standard applies to

10  withholding of housing for unlawful reason.  *Keith v. Volpe*, 858 F. 2d 467 (9th Cir.

11  1988).  Thus, even discriminatory statements that cause a plaintiff emotional

12  distress must have some impact, such as disruption in a tenant's right of quiet

13  enjoyment of her apartment.  *E.g., Harris v. Itzhaki*, 183 F. 3d 1043 (9th Cir. 1999).

14  Similarly, where a vendor's listing agents acted awkwardly and lacked

15  enthusiasm during an African-American's attempt to buy a house, they were not

16  found to have acted with discriminatory intent, as required to establish a *prima*

17  *facie* case for discrimination.  *Ojo v. Farmers Group, Inc.,* 600 F. 3d 1205 (9th Cir.

18  2010); *McDonald v. Coldwell Banker*, 543 F. 3d 498 (9th Cir. 2008).  A prospective

19  tenant must further show that they applied for and were qualified to rent housing,

20  and that the rental opportunity for which they applied remained available after they

21  were rejected.  *Hoeft-Ross v. Hoeft,* 352 Fed. Appx. 221 (9th Cir. 2009).

22  In addition, if Plaintiffs establish a claim for violation of the Fair Housing

23  Act based on intentional discrimination, the defendant must present some

24  legitimate, nondiscriminatory reason for its actions.  *Sanghi v. City of Claremont,*

25  328 F. 3d 532 (9th Cir. 2003).

26  In this case, there is no evidence that Defendant Hung actually engaged in

27  conduct which had a discriminatory impact on Plaintiff Lewis.  In fact, when

28  presented with her written statement attached to the Department of Housing and

1   Urban Development Complaint filed in connection with this matter, Lewis

2   confirmed that she wrote the words: "I said she didn't like to rent to people with

3   S.S.I." (Nevinny Decl., Exhibit "B"; DUF No. 19.)  Lewis testified incredibly that

4   this was an "error in writing," and that this should have been a quotation of Hung's

5   words.  (AL, 80:17-25.)

6        In addition, during the last ten years, Defendant Hung has rented to a family

7   with a mentally disabled child at the 4th Street Property.  The child's disability was

8   disclosed to Ms. Hung by the parent at the time of her rental application.

9   Currently, she rents Unit #101 at the 4th Street Property to another family with a

10  severely mentally disabled child.  (S. Hung Decl., ¶ 5; DUF No. 4.)  Thus, there is

11  no competent, admissible evidence that Ms. Hung actually has, or does, engage in

12  discriminatory housing practices.

13       In addition, the FHCOC's tester Ms. Rostagno testified that after she

14  informed Mr. Hung about her son's mental disability, his response was to inquire

15  about her son's physical ability to access the available unit, which was located on

16  the second floor.  (DR, 58:14-23; DUF No. 26.)  This question was asked out of

17  concern for Ms. Rostagno's son's ability to access the apartment in question.  (N.

18  Hung Decl., ¶ 5; DUF No. 27.)  Therefore, there was a legitimate,

19  nondiscriminatory purpose for asking the question.

20       *After* the foregoing, Mr. Hung then proceeded to show Rostagno the

21  available unit, stating, "This is a nice place for two adults."  (DR, 62:12-24; 65:8-9;

22  DUF No. 29.)  Next, Mr. Hung responded to Rostagno's questions regarding a

23  security deposit and credit check, and volunteered information regarding utilities

24  and parking.  (DR, 67:19-68:8; N. Hung Decl., ¶ 6; DUF No. 30.)

25       Rostagno then asked for a rental application, and Mr. Hung looked for one in

26  the kitchen of the apartment.  (DR, 70:14-24; DUF No. 31.)  When Mr. Hung could

27  not find one, he then said, "I think I have one in my car."  (DR, 71:2-16; DUF No.

28  32.)  Mr. Hung and Rostagno next proceeded to walk to Mr. Hung's car, where he

1    located a rental application, and provided it to Rostagno, inviting her to fill it out

2    and provide it to his wife, Susan Hung. (DR, 73:4-19; N. Hung Decl., ¶ 7; DUF

3    No. 33.)

4       Next, Mr. Hung also offered to show the prospective tenant another available

5    apartment unit at the 4th Street Property. Rostagno, however, declined to let Mr.

6    Hung show her the other apartment, because she stated that she had to leave to visit

7    another property. (Hung Decl., ¶ 8; DUF No. 34.) This conduct by Defendant

8    Hung's husband Norman Hung was *consistent* with the testimony of another

9    FHCOC tested, Sarah Goldstein, who testified that she was shown two apartment

10    units by Ms. Hung.

11       None of the foregoing demonstrates any actual conduct having a

12    discriminatory effect. Therefore, Defendant Susan Hung (and her agents and

13    representatives) is entitled to Summary Judgment in her favor. In the alternative,

14    she is entitled to an Order establishing that she is not liable on any claims under the

15    federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (Claim One), California's Fair

16    Employment and Housing Act, *Government Code* § 12955 *et seq.* (Claim Two),

17    California's Unruh Civil Rights Act, *Civil Code* § 51 (Claim Three), California

18    *Business & Professions Code* § 17200 (Claim Four), and Negligence (Claim Five).

19      **C.**    **Plaintiff Arlene Lewis Has Not Suffered Any Emotional Distress**

20         **Damages Attributable to the Conduct of Defendant Hung**

21       Plaintiff Arlene Lewis' testimony regarding the emotional distress damages

22    she allegedly suffered was illogical, and cannot be tied to any conduct of

23    Defendant Susan Hung (even if proven). Lewis claimed to suffer certain physical

24    symptoms, such as headaches, dizziness and weight gain, none of which can be

25    attributed to the alleged phone call with Ms. Hung, as opposed to her personal

26    family issues, the 20 (twenty) other instances of discrimination suffered by Ms.

27    Lewis, or the two other Fair Housing Complaints she lodged during the relevant

28    time period. In any event, Ms. Lewis offers no objective evidence of such

17

1  damages, which simply do not exist.

2       For example, Ms. Lewis moved to her friend's apartment in Orange County

3  for the specific purpose of getting away from her adult son, Tommy Joseph, whom

4  she did not want to know where she resided. (AL, 38:15-24; DUF No. 9.)  The

5  reason for Ms. Lewis' move was corroborated by Patricia McNeal, who testified

6  that Ms. Lewis was having problems with one of her family members, and that Ms.

7  McNeal was actually "afraid" for her friend. (Deposition Transcript of Patricia

8  McNeal ("PM"), Nevinny Decl., Exhibit "E," 23:3-7; DUF No. 10.)  Presumably

9  this circumstance and concern for her own safety would have caused Ms. Lewis

10  considerable emotional distress.

11       Ms. Lewis further testified that between June, 2009 and November, 2009,

12  she was turned down while seeking to rent an apartment approximately twenty (20)

13  times. (AL, 45:11-14; DUF No. 11.)  Specifically, Lewis testified that on at least

14  two occasions outside of this case, she was denied an apartment based upon her

15  son's disability. (AL, 50:2-6; 56:1-3; DUF No. 12.)  Lewis initiated complaints

16  with the Fair Housing Council of Long Beach based upon each of these

17  experiences, which were not pursued, as "inconclusive." (AL, 52:2-4; 56:16-18;

18  DUF No. 13.)  Presumably, these other multiple rejections and Fair Housing

19  Complaints also would have caused Ms. Lewis emotional distress.

20       After the alleged telephone conversation with Ms. Hung which purportedly

21  caused her so much distress, Lewis claimed that she did "nothing," other than to

22  continue to search for an apartment. (AL:73:1-4; DUF No. 17.)  A week or two

23  later, Lewis then lodged a complaint with the FHCOC. (AL, 74:10-21; DUF No.

24  18.)

25       Next, the timing of Ms. Lewis' alleged emotional distress damages is

26  illogical and inconsistent.  Notably, Ms. McNeal testified at length and in detail

27  that Lewis suffered from such symptoms during the time that Lewis resided with

28  her, *months before* any of the incidents alleged in the Complaint. (PM, 22:11-17;

18

23:8-23; 38:1-20; DUF No. 22.)  According to Ms. McNeal, Lewis moved out of her apartment in the summer of 2009, months before the alleged phone call with Ms. Hung in November, 2009.  (PM, 31:13-15; DUF No. 23.)

Moreover, Lewis did not seek any medical treatment in connection with her symptoms, did not see a doctor, did not visit a psychiatrist, did not visit a psychologist, was not prescribed any medications, and did not take any over the counter medications.  (AL, 109:10-21; 113:17-114:1; DUF No. 21.)

Simply put, Plaintiff Lewis has not presented any evidence that would establish causation of emotional distress damages by Defendant Susan Hung. Hung is therefore entitled to Partial Summary Judgment on this issue, treating the absence of emotional distress damages as established.

**D.    Plaintiff FHCOC Cannot Establish Its Entitlement to Diversion of Resource or Frustration of Mission Damages**

To recover diversion of resource damages, Plaintiff FHCOC is required, at a minimum, to provide a "reasonable estimate" of its damages.  *See, e.g., Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F. 3d 814, 820, fn. 6 (9th Cir. 2001).  Defendant recognizes that Plaintiff is not required to calculate "an exact figure down to the penny to grant compensatory damages ..." *Housing Rights Center v. Krug,* 654 F. Supp. 2d 1138, 1147-48 (C.D. Cal. 2007).  In this case, however, Plaintiff calculation of diversion of resource damages is so speculative, so inflated, as to be wholly unreasonable.  Given the illogical manner in which time records are kept by the FHCOC, there is no rational manner in which a trier of fact could reasonably assess compensatory damages in this case.

For example, although the testimony of the FHCOC's representatives was highly confusing on this point, it *appears* that time spent on a particular file is estimated by combining total hours worked, and then estimating a time for a particular file.   Ms. Coronel, an investigator with the FHCOC, testified that she keeps track of time "In my head," and that time spent on a file is estimated based

on the hours spent on all case files.  (AC, Nevinny Decl. Exhibit "F," 56:13-57:19; DUF No. 35.)  Ms. Coronel has now attempted to shore up this weak evidence of hours spent on files by dramatically changing the substance of her testimony.  A review of the entirety of her testimony, however, demonstrates that there are no records of contemporaneous time entries connected to a particular file.  In other words, the FHCOC is making it up as it goes along.

These unsubstantiated damages claims were further muddled by Denise Cato, FHCOC's Chief Operating officer.  Ms. Cato testified that she used to keep track of her time in notebooks that she has since discarded, and that time is now set forth in a log of meetings, maintained by another employee.  (DC, Nevinny Decl., Exhibit "H," 33:7-34:25; DUF No. 38.)  Ms. Cato confusingly testified that her counselors keep track of Ms. Cato's own time.  (DC, 35:17-36:16; DUF No. 39.)  Ms. Cato further confirmed that testers are paid $42.50 to $55 per test, but that FHCOC is seeking $400 per test in this case, which includes recruiting, training, and materials for testers.  (DC, 43:5-23; DUF No. 40.)

The FHCOC's claim for frustration of mission damages are equally unfounded, and unreasonable.  Plaintiffs claim that they are entitled to such damages to redress the damage that discriminatory housing practices inflict on the Fair Housing Council's mission, but also to the community at large.  *Krug, supra,* 564 F. Supp. 2d at 1153.

Of course, such wrongs do not require redress where they do not exist.  Ms. Hung has rented to disabled people in the past, and continues to do so.  (S. Hung Decl., ¶ 5; DUF No. 4.)

Even if such damages for frustration of mission were recoverable, they would still be impermissibly speculative and unreasonable.  The FHCOC has presented no actual evidence of the costs of five years of public service announcements broadcast in the Buena Park community, or newspaper advertisements in Orange County.  (DC, 49:21-25; DUF No. 41.)  Moreover, the

20

1   further charges for future staff time, including attorney time, are all estimates,

2   which are not substantiated.  (DC, 53:23-24; 55:14-19; DUF No. 42.)

3        Given the foregoing facts and authorities, Defendant Hung is entitled to

4   Partial Summary Judgment on this issue, treating the absence of diversion of

5   resources and frustration of mission damages as established.

6   **E.    Defendant Hung Did Not Engage in Any Conduct Which Gives**

7   **        Rise to a Claim for Punitive Damages**

8        In order to establish entitlement to punitive damages under the Fair Housing

9   Act, a showing of reckless indifference is necessary for a plaintiff to prevail on

10  their punitive damages claim. *See, Fair Housing of Marin v. Combs,* 285 F.3d 899,

11  906 (9th Cir. 2002) (awarding punitive damages where the defendant's conduct

12  "involves reckless or callous indifference to the federally protected rights of

13  others"); *see also,* 42 U.S.C. § 3613(c) (allowing punitive damages "if the court

14  finds that a discriminatory housing practice has occurred").

15       A finding of reckless indifference "ultimately focus[es] on the actor's state of

16  mind," and requires that the defendant "at least discriminate in the face of a

17  perceived risk that its actions will violate federal law to be liable in punitive

18  damages." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 535, 119 S.Ct. 2118,

19  144 L.Ed.2d 494 (1999). A reckless indifference finding, however, does not require

20  that the defendant "engage in conduct with some independent, 'egregious' quality

21  before being subject to a punitive award." *Kolstad,* 527 U.S. at 537, 119 S.Ct.

22  2118.

23       The evidence shows that Lewis apparently had one phone call with Ms.

24  Hung, in which Lewis claims Hung refused to rent to her, based upon her son's

25  disability.  A closer examination of the evidence, however, demonstrates that there

26  is no evidence in the record of reckless indifference on the part of Defendant Hung,

27  her agents or representatives.

28       For example, Ms. Lewis would not respond when asked if Ms. Hung called

1  her back to arrange an appointment to see an apartment.  Rather, Lewis testified
2  that such an appointment was never "confirmed."  (AL, 68:7-15; 69:5-18; DUF No.
3  16.)  Furthermore, Ms. Hung would not have had to consult with her husband in
4  order to arrange such a meeting. (S. Hung Decl., ¶ 6;  Declaration of Norman Hung
5  ("N. Hung Decl."), ¶ 9; DUF No. 5.)

6      Next, the conduct of Ms. Hung's husband Norman evidences the complete
7  *absence* of reckless indifference.  Rather, Mr. Hung was helpful, responsive, polite
8  and completely willing to show and offer the apartment to the FHCOC's tester for
9  rental.  After the FHCOC's tester disclosed her son's mental disability, Mr. Hung:
10  inquired as to her son's physical condition, as the available unit was on the second
11  floor; informed the tester of another mentally disabled tenant to whom the Hungs
12  had rented; showed the tester the unit; spoke favorably about the unit; answered all
13  of the tester's questions regarding rental and volunteered other helpful information;
14  looked for an application; told the tester that he believed he had an application in
15  his car; went to his car in order to provide the tester the application; invited the
16  tester to complete and return the application, including all relevant contact
17  information for the Hungs; and then offered to show the tester a second apartment
18  for rent.  (Nevinny Decl., Exhibit "D"; N. Hung Decl., ¶ 8, DUF No. 34.)

19      Even taken in the light most favorable to the Plaintiffs, a reasonable jury
20  simply could not find that Defendant acted with reckless indifference. *See M2*
21  *Software, Inc. v. Madacy Entertainment Corp.*, 421 F. 3d 1073, 1086 (9th Cir.
22  2005).  Accordingly, Hung is entitled to Partial Summary Judgment on this issue,
23  treating the absence of availability of punitive damages as established.

24
25                 **IV.**
26            **CONCLUSION**
27      For all of the foregoing reasons, Defendant Susan Hung is entitled to
28  Summary Judgment in her favor on Plaintiffs' Complaint.  In the alternative, the

1  Defendant is entitled to an Order treating the facts described herein as established.

2

3                                    Respectfully Submitted,

4  Dated: September 2, 2011          ECOFF BLUT, LLP

5

6

7

8                                    LAWRENCE C. ECOFF, ESQ.
                                     PHILIP H.R. NEVINNY, ESQ.
9
                                     Attorneys for Defendant
10                                   SUSAN HUNG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**